IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JOHN WILSON, JOHN ARNOLD, ROY COVEY, JAMES BRENT ENSEY, EDGAR KELLEHER, BRIAN LOGAN, TERRY S. MARTIN, ROBERT ROBERTSON, JACOB WILSON, MITCHELL BRADFORD, RICHARD LUTHER, JOHN CRAFT, DANIEL JOHNSON, JASON DILLARD, and RONALD ATTERBURY, | § § § § § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 1:17-CV-453 |
| BRENT STROMAN, MANUEL CHAVEZ, ABELINO "ABEL" REYNA, CITY OF WACO, TEXAS, MCLENNAN COUNTY, TEXAS, ROBERT LANNING, JEFFREY ROGERS, PATRICK SWANTON, STEVEN SCHWARTZ, and CHRISTOPHER FROST, | § § § § § § § § § | |
| Defendants. | § | |

**PLAINTIFFS' ORIGINAL COMPLAINT AND JURY DEMAND**

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiffs John Wilson, John Arnold, Roy Covey, James Brent Ensey, Edgar Kelleher, Brian Logan, Terry S. Martin, Robert Robertson, Jacob Wilson, Mitchell Bradford, Richard Luther, John Craft, Daniel Johnson, Jason Dillard, and Ronald Atterbury (hereinafter "Plaintiffs"), files this, their Original Complaint and in support respectfully show the Court as follows:

## I. <u>INTRODUCTION</u>

1.      This is a civil rights action brought pursuant to 42 U.S.C. § 1983 arising from the unlawful arrests that occurred in Waco, Texas on May 17, 2015. The mass arrests were unprecedented in both their scope and the complete absence of individual, particularized facts to establish probable cause. Plaintiffs are seeking damages against Defendants Brent Stroman, Manuel Chavez, Abelino "Abel" Reyna, Robert Lanning, Jeffrey Rogers, Patrick Swanton, Steven Schwartz, and Christopher Frost in their individual capacities, for committing acts under color of law, which deprived Plaintiffs, as well as many other persons, of rights secured under the Constitution and Laws of the United States. Plaintiffs are also seeking damages against the City of Waco, Texas and McLennan County, Texas for similar constitutional violations.

2.      In this suit, fifteen individuals, whose constitutional rights have been trampled on and ignored by Defendants for almost two years, assert claims pursuant to 42 U.S.C. § 1983. This suit seeks to correct the miscarriage of justice and assault on the United States Constitution perpetrated by these Defendants.

## II. <u>PARTIES</u>

3.      Plaintiff John Wilson is a resident of McLennan County, Texas

4.      Plaintiff John Arnold is a resident of McLennan County, Texas.

5.      Plaintiff Roy Covey is a resident Bosque County, Texas.

6.      Plaintiff James Brent Ensey is a resident of Stephens County, Texas.

7.      Plaintiff Edgar Kelleher is a resident of Palo Pinto County, Texas.

8.      Plaintiff Brian Logan is a resident of Maryland.

9.      Plaintiff Terry S. Martin is a resident of Lubbock County, Texas.

10.     Plaintiff Robert Robertson is a resident of Tarrant County, Texas.

11.     Plaintiff Jacob Wilson is a resident of McLennan County, Texas.

12.     Plaintiff Mitchell Bradford is a resident of Palo Pinto County, Texas.

13.     Plaintiff Richard Luther is a resident of Dallas County, Texas.

14.     Plaintiff John Craft is a resident of Bell County, Texas.

15.     Plaintiff Daniel Johnson is McLennan County, Texas.

16.     Plaintiff Jason Dillard is a resident of Smith County, Texas.

17.     Plaintiff Ronald Atterbury is a resident of Coryell County, Texas.

18.     Chief Brent Stroman ("the Chief" or "Stroman"), is the Chief of Police of the Waco Police Department (hereinafter "WPD") and is sued in his individual capacity. He acted under the color of law of the statutes, ordinances, regulations, policies, customs, and usages of the State of Texas. Defendant Stroman may be served with process at his place of business in the Waco Police Department, 3115 Pine Avenue, Waco, Texas, 76708.

19.     Det. Manuel Chavez ("Chavez"), is a police officer employed by the Waco Police Department. Chavez is sued in his individual capacity. He acted under the color of law of the statues, ordinances, regulations, policies, customs, and usages of the State of Texas and/or the City of Waco, Texas. Defendant may be served with process at the Waco Police Department, located at 3115 Pine Avenue, Waco, Texas, 76708.

20.     Abelino "Abel" Reyna ("Reyna"), is the elected District Attorney of McLennan County, Texas and is sued in his individual capacity. He acted under the

color of law of the statues, ordinances, regulations, policies, customs, and usages of the State of Texas. Defendant Reyna may be served with process at 219 N. 6th Street, Waco, Texas 76701.

21.    Defendant City of Waco, Texas is a municipality existing under the laws of the State of Texas and can be served with process by serving the City Secretary at 300 Austin Ave., Waco, Texas 76701.

22.    Defendant McLennan County, Texas is a governmental unit existing under the laws of the State of Texas and can be served with process by servicing the County Judge at 501 Washington Ave., Waco, Texas 76701.

23.    Robert Lanning ("Lanning"), is an Assistant Chief of Police and is employed by the Waco Police Department. Lanning is sued in his individual capacity. He acted under the color of law of the statues, ordinances, regulations, policies, customs, and usages of the State of Texas and/or the City of Waco, Texas. Defendant Rogers may be served with process at his place of business in the Waco Police Department, 3115 Pine Avenue, Waco, Texas, 76708.

24.    Det. Jeffrey Rogers ("Rogers"), is a police officer employed by the Waco Police Department. Rogers is sued in his individual capacity. He acted under the color of law of the statues, ordinances, regulations, policies, customs, and usages of the State of Texas and/or the City of Waco, Texas. Defendant Rogers may be served with process at his place of business in the Waco Police Department, 3115 Pine Avenue, Waco, Texas, 76708.

25.    Patrick Swanton ("Swanton"), is a police officer employed by the Waco Police Department. Swanton is sued in his individual capacity. He acted under the color of law of the statues, ordinances, regulations, policies, customs, and usages of the State of Texas and/or the City of Waco, Texas. Defendant Swanton may be served with process at his place of business in the Waco Police Department, 3115 Pine Avenue, Waco, Texas, 76708.

26.    Steven Schwartz (hereinafter "Schwartz") is a special agent employed by the Texas Department of Public Safety (hereinafter "DPS"). Schwartz is sued in his individual capacity. He acted under the color of law of the statues, ordinances, regulations, policies, customs, and usages of the State of Texas and/or the City of Waco, Texas. Defendant Schwartz may be served with process at his place of business in the Texas Department of Public Safety, 5805 North Lamar Blvd., Austin, Texas, 78752-4431.

27.    Christopher Frost (hereinafter "Frost") is a special agent employed by the Texas Department of Public Safety. Frost is sued in his individual capacity. He acted under the color of law of the statues, ordinances, regulations, policies, customs, and usages of the State of Texas and/or the City of Waco, Texas. Defendant Frost may be served with process at his place of business in the Texas Department of Public Safety, 5805 North Lamar Blvd., Austin, Texas, 78752-4431.

## II. <u>JURISDICTION</u>

28.    This action is brought pursuant to 42 U.S.C. § 1983. The Court has jurisdiction over this lawsuit pursuant to 28 U.S.C § 1331, as this lawsuit arises under the Constitution, laws, or treaties of the United States.

## III.  VENUE

29.     Venue is proper in this Court under 28 U.S.C. § 1391(b), as this is the judicial district in which a substantial part of the events or omissions giving rise to the claims occurred.

## IV.  FACTUAL BACKGROUND

### OVERVIEW

30.     On May 17, 2015, hundreds of motorcycle enthusiasts from across the state gathered in Waco, Texas for a scheduled Texas Confederation of Clubs & Independents ("COC") meeting. As with any COC meeting, bikers expected to hear from speakers on topics ranging from state legislative updates to national motorcycle safety initiatives. The Waco COC meeting was also expected to be as much a social gathering as it was informative.

31.     Tragically, violence erupted and nine lives were lost, with others sustaining non-fatal injures. Because law enforcement had become aware of friction between some members of the Bandidos Motorcycle Club ("Bandidos") and some members of the Cossacks Motorcycle Club ("Cossacks"), undercover and uniformed officers were located around the perimeters of the Twin Peaks restaurant where the COC meeting was occurring. These law enforcement officers were armed with assault rifles and responded to the violence with deadly force.

32.     It is undisputed that members of law enforcement fired upon individuals at the gathering, although it is yet unknown the extent of the injuries caused by law enforcement. Regardless of the manner or cause of the deaths, the loss of life that occurred that day is, without question, tragic. Unfortunately, the actions of law

enforcement, including members of the McLennan County District Attorney's Office, compounded the tragedy by causing the wrongful arrest and incarceration of countless innocent individuals.

33.     Despite a total lack of particularized evidence relating to specific individuals, Defendants Stroman, Chavez, Reyna, Lanning, Rogers, Swanton, Schwartz, and Frost determined that individuals would be arrested and charged with Engaging in Organized Criminal Activity based entirely on their presence at Twin Peaks, the motorcycle club that Defendants presumed an individual was associated with, and/or the clothing they were wearing at the time of the incident. Rather than investigating the incident and relying on actual facts to establish probable cause, Defendants theorized that a conspiracy of epic proportion between dozens of people had taken place, and willfully ignored the total absence of facts to support their "theory."

34.     In the absence of particularized evidence to establish probable cause against Plaintiffs, Defendants caused an affidavit to be issued and sworn to by Defendant Chavez that contained material misrepresentations. Specifically, the affidavit alleges that Plaintiffs were members of a criminal street gang and that they regularly associate in the commission of criminal activities. As more fully set forth below, Plaintiffs are neither members of a criminal street gang, nor do they regularly associate in the commission of criminal activities.  Plaintiffs categorically deny the truthfulness or accuracy of either statement. Defendants' conduct of alleging these "facts" against Plaintiffs when they, in fact, had no such evidence can only be construed as willful, intentional, and/or reckless.

**SPECIFIC FACTUAL ALLEGATIONS**

35.     The COC is a non-profit organization of motorcyclists with a mission to lobby for motorcyclist rights and safety legislation in the State of Texas.

36.     COC meetings are not held in any one specific city and are open to all motorcyclists.

37.     The May 17, 2015 COC meeting in Waco had been scheduled several weeks in advance, and was posted publicly on the COC website prior to the date of the event. Bikers from numerous motorcycle clubs from all over the state were expected to attend.

38.     Numerous motorcycle clubs were represented at the May 17th COC gathering. No law of the State of Texas or the United States prohibits an individual's right to associate with a motorcycle club. In fact, an individual's right to associate is guaranteed by the First Amendment to the United States Constitution.

39.     Prior to the May COC meeting, tension existed between certain members of the Bandidos Motorcycle Club and certain members of the Cossacks Motorcycle Club. This tension was known to law enforcement and as a result, law enforcement had officers present for the purpose of security and to monitor the gathering.

**THE INCIDENT**

40. At approximately noon on May 17, 2015, an altercation occurred between several individuals. Within moments, the situation escalated and shots were fired. At its conclusion, nine individuals were killed and at least twenty were injured. To date, the total extent to which the fatalities and injuries were caused by gunfire from law

enforcement officers remains unknown. Autopsy and ballistics reports indicate that at least four of the deaths were the direct result of shots by law enforcement.

41.     As the gunfire erupted, video evidence conclusively proves that the vast majority of the individuals present at the location did not participate in any violent activity, but instead ran away from the gunfire or ducked for cover.

42.     Once the shooting ceased, law enforcement officers immediately took control of the premises. The individuals present were compliant and did not resist commands of law enforcement.

**INVESTIGATION**

43.     Defendant Chavez is a detective in the Special Crimes Unit of the WPD. On May 17, 2015, he was the on-call investigator and as a result, was called to the scene as the lead investigator of the Twin Peaks incident.

44.     Defendant Rogers is a WPD gang detective. On or about May 17, 2015, Defendant Rogers, along with DPS agents Schwartz and Frost provided false and misleading information regarding Plaintiffs alleged affiliation with criminal street gangs, which ultimately was a primary factor in causing their false arrest.

45.     On or about May 17, 2015, Defendant Swanton, a WPD officer, also provided false and misleading information during numerous press conferences to the public regarding Plaintiffs' alleged affiliation with criminal street gangs, which ultimately was a primary factor in causing each Plaintiff's false arrest.

46.     Defendant Reyna, the elected McLennan County District Attorney, and First Assistant District Attorney Michael Jarrett were on scene after the incident

investigating the shooting, along with law enforcement officials from numerous local agencies. Defendant Reyna has publicly acknowledged that he took the unusual step of assisting law enforcement officials and was involved in the actual investigation of the incident.

47.    After several hours, all individuals in attendance at the COC meeting were transported to the Waco Convention Center for interviews. For the remainder of the day, WPD detectives, Texas Rangers, and DPS special agents conducted interviews of those in attendance.

48.    Initially Defendant Chavez advised detectives and investigators to Mirandize each individual prior to questioning. However, at approximately 7:30 p.m. Defendant Chavez reversed course and instructed detectives and investigators to stop reading the *Miranda*[1] warnings, as the bikers were not under arrest.

49.    Throughout the interviews, a common theme became evident – the detained individuals were merely present for a meeting, to visit with friends, eat food, and enjoy socializing with other motorcycle enthusiasts. During the interviews, it was learned that most were nowhere near the shooting; many had just arrived at the restaurant; and none were aware of a prearranged plan of violence. It was also learned that the vast majority of the individuals immediately took cover at the outset of the gunfire, and did not in any way participate in or encourage the violence. Video evidence in the possession of law enforcement, and reviewed within hours of the incident, clearly demonstrates that the vast majority of those present, including Plaintiffs, appeared surprised and confused upon hearing the initial gunfire, and

---

[1]    *Miranda v. Arizona*, 384 U.S. 436, 478-79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

further, clearly shows the vast majority of those present, including Plaintiffs, running away from the disturbance, not toward it. The video evidence clearly and unambiguously proves the complete lack of involvement in the disturbance of the vast majority present, including Plaintiffs.

50.     Investigators, many of whom were from the Austin division of DPS, were providing the information learned during interviews directly to Defendant Stroman, Defendant Reyna, and Defendant Lanning, who was the acting Chief of Police at the time of the incident.

51.     Documents related to this incident clearly establish that a very specific plan for the release of most individuals was in the works just prior to the decision to arrest everyone and charge each person with the first degree felony of Engaging in Organized Criminal Activity with the Intent to Commit or Conspire to Commit Murder, Capital Murder, or Aggravated Assault.

**DEFENDANTS' DECISION TO ARREST**

52.     Defendant Chavez ordered all of the investigators to stop their interviews at approximately 8:30 p.m. because Defendant Reyna had called a meeting. From approximately 9:00 p.m. to 10:30 p.m., Defendants met regarding the incident. Soon thereafter, investigators were informed that Defendants had decided to arrest all motorcyclists that met certain criteria, and to charge each with the offense of Engaging in Organized Criminal Activity.

53.     Defendant Stroman, Lanning, and/or Reyna provided an arrest criteria list for all detectives to follow in compiling the list of individuals to be arrested.

Documents related to the mass arrests prove that Defendants made the determination to arrest based on motorcycle club association and/or clothing, patches, key chains, etc. that Defendants arbitrarily decided reflected "support" for either the Bandidos or the Cossacks. In fact, much of the clothing, patches, key chains, etc. that Defendants claim signifies gang membership was, and remains, available for public purchase over the internet, at motorcycle gatherings, and in some retail stores throughout Texas.

54.    Defendant Stroman has publicly acknowledged his responsibility in the decision to arrest the 177, including Plaintiffs as described more fully below. Documents related to the incident clearly establish Defendant Reyna's responsibility for the ill-fated decision as well.  In a press conference following the mass arrests, Stroman verbally stated that he was responsible for the decision to make the mass arrests.

55.    Despite possessing video from numerous angles showing the complete lack of involvement of most of those arrested and hours and hours of interviews with the arrested individuals in which no evidence of a conspiracy was uncovered to support their "theory" of pre-planned violence, Defendants willfully, intentionally, and recklessly charged 177 individuals with the identical first degree felony of Engaging in Organized Criminal Activity with the Intent to Commit or Conspire to Commit Murder, Capital Murder, or Aggravated Assault.

56.    To clarify, the decision to arrest and charge Plaintiffs and the other individuals with crimes despite video evidence, and statements from hundreds of witnesses, that *directly contradict the existence of probable cause*, or any reasonable belief thereof, can only be characterized as willful, intentional, and/or reckless.  Based

on the very specific information known by Defendants at the time their decision was made to arrest, including CLEAR and UNAMBIGUOUS video evidence directly at odds with Defendants' theory of a mass criminal enterprise engaging in organized crime, it is impossible to believe Defendants' conduct and decisions were anything other than willful, intentional, and/or reckless. Defendants' decision to ignore contrary and exculpatory evidence in favor of a theory unsupported by the facts or the law was consciously made and therefore willful, intentional, and/or reckless. Investigative reports and DPS witness summaries provide specific proof of the facts alleged herein.

**THE AFFIDAVIT TO OBTAIN AN ARREST WARRANT**

57.     On or about May 18, 2015, or May 19, 2015, Defendants caused a general warrant, as that term has been defined by the United States Supreme Court, to be used for the purpose of obtaining arrest warrants for each of the 177 individuals, including Plaintiffs.

58.     Despite the United States Constitution requiring a *particularized* showing of facts against an individual before a warrant can issue, an identical fill-in-the-name affidavit (hereinafter "affidavit" or "probable cause affidavit," attached hereto as Exhibit 1) was used as the basis for establishing probable cause for each of the arrested individuals.

59.     It is indisputable that the affidavit in question **does not set forth particularized facts against Plaintiffs** that would in any way establish probable cause. Assuming *arguendo* that the probable cause affidavit contains specific allegations of fact against each Plaintiff, each such allegation is false and untrue. Accordingly, the

probable cause affidavit is completely false in material ways as it relates to these Plaintiffs.

60.    The affidavit against each Plaintiff fails to set forth any specific facts that, if believed, would constitute probable cause.  Even if the claim that each Plaintiff is "a member of a criminal street gang" was true, and it is not, the affidavits lack any factual assertions specific to each Plaintiff upon which a finding of probable cause could be based.

61.    Defendant Chavez has acknowledged that he read the template affidavit and inserted names of individuals based on a list he was provided. Chavez has testified in examining trials that he did not, in fact, possess personal knowledge of all the assertions made in the affidavit. He has further testified to a lack of knowledge concerning individual arrestees' involvement in the incident.

62.    Defendant Chavez did not question the template affidavit or the basis of the criminal charge despite the fact that he had already begun the process of overseeing arrangements to release all of the detainees.

63.    Defendant Chavez swore to 177 template affidavits *en masse* – that is, he swore under oath that the stack before him was true and correct – and is the sole affiant for all affidavits. Chavez swore under oath he had personal knowledge of the information contained therein, even though he did not. Having read the affidavit, Defendant Chavez knew he did not have personal knowledge as to the particular facts of any one person, including Plaintiffs. Chavez knew that the affidavit was open-ended,

false, and misleading in a material manner, yet he presented it to Magistrate Peterson for the purpose of obtaining arrest warrants, including Plaintiffs'.

64.    The template affidavit, sworn to by Defendant Chavez, is wholly lacking in probable cause, and instead is filled with conclusory, inaccurate statements and/or background facts. Plain and simple, the affidavit does not indicate any particular facts that Plaintiffs were even aware of tension that might have existed between certain individuals that were present at Twin Peaks.  The affidavit does not assert how, when, where, or with whom Plaintiffs conspired or to any facts that could be construed as a decision by Plaintiffs to engage in a conspiracy.  The affidavit is devoid of any facts describing any criminal activity in which Plaintiffs were believed to be involved.

65.    The affidavit falsely states that each Plaintiff is "a member of a criminal street gang." That statement is categorically *false*. It is an indisputable fact that Defendants did not possess any reliable, particularized information to indicate that Plaintiffs themselves were members of a criminal street gang on or before the date such fact was sworn to by Defendant Chavez. Plaintiffs were not, and never have been, members of a criminal street gang.  During all relevant time periods, Plaintiffs were not associated with any organization that meets any known definition of "criminal street gang."  Plaintiffs were not, and never have agreed to be in a gang of any type, much less a "criminal street gang."  Plaintiffs are law abiding citizens who associate with other law abiding citizens and in no way, shape, or form are members of a "criminal street gang."  Plaintiffs were not included on any law enforcement lists as a "criminal street gang."  Finally, no law enforcement list or database showed any of the Plaintiffs to be a

"member of a criminal street gang" at the time of the incident or on the date on which Defendant Chavez swore to those facts for the purpose of establishing probable cause.

66.    Notwithstanding any of the above, Defendants Rogers, Swanton, Schwartz, and Frost made material misrepresentations to the contrary that they knew would be relied upon in forming a basis for probable cause to arrest Plaintiffs. By indicating that Plaintiffs were members of criminal street gangs, when in fact they were not, and when there was no such evidence of gang membership, Defendants caused a warrant to be issued that would otherwise have lacked any factual basis for probable cause.

67.    Defendants Chavez, Stroman, Lanning and Reyna all knew the exact wording of the probable cause affidavit and knew at the time it was sworn to and presented to the magistrate for a determination of probable cause that it contained false statements.  They knew the affidavit contained false and misleading statements because they were involved in every aspect of the investigation from the beginning, and knew or should have known that Plaintiffs were not members of a criminal street gang because no evidence existed that made such an assertion, and neither Plaintiffs nor their respective motorcycle clubs were identified on any law enforcement database at the time of the incident in question as being in a criminal street gang, or members of a criminal street gang.  On the date that Plaintiffs were arrested and falsely charged, Defendants Chavez, Stroman, Reyna, Lanning, Rogers, Swanton, Schwartz, and Frost all were privy to DPS gang databases and knew or should have known that none identified Plaintiffs as members of a criminal street gang.  Nonetheless, each Defendant

allowed the false statement to become a central basis for the arrests and detention of Plaintiffs.

68.     Further, Defendants Chavez, Stroman, Lanning, and Reyna all knew, or should have known, that Plaintiffs were not engaging in criminal conduct at Twin Peaks since the video evidence in their possession CLEARLY and UNAMBIGUOUSLY proves that Plaintiffs did not participate in, nor did they encourage, the disturbance that escalated into violence.   In fact, the video evidence **proves** that Plaintiffs were **not** involved, yet the Defendants acted in direct contravention of the video evidence and caused Plaintiffs' constitutional rights to be violated.   Each Defendant was certainly aware that neither he, nor any other law enforcement officer, possessed knowledge that Plaintiffs were a member of a criminal street gang, or that Plaintiffs regularly associated in the commission of criminal activities.

69.     In the aftermath of the incident at Twin Peaks, Defendants apparently concluded that the Bill of Rights to the U.S. Constitution ceased to apply, and could be ignored given what they perceived as an immediate need to announce the re-establishment of law and order in their town.

70.     Compounding Defendants' gross violations of civil rights, an identical one million dollars ($1,000,000.00) bail was set for each of the 177 detained individuals, including Plaintiffs, despite the Eighth Amendment to the U. S. Constitution's clear mandate that "excessive bail shall not be required, nor excessive fines imposed..." As a result of all of the above, Plaintiffs were wrongfully incarcerated following their arrest.

## MISSTATEMENTS AND EXAGGERATIONS TO THE MEDIA

71.     Within hours of the Twin Peaks incident, information was provided to the media that was inaccurate, exaggerated, and highly misleading. Defendant Stroman allowed WPD representatives, particularly Defendant Swanton, to set forth a narrative that was inaccurate in many respects. The "shootout between outlaw motorcycle gangs" theme that continues to be trumpeted is patently false. Defendant Swanton's perpetuation of the narrative has caused irreparable harm to the reputations of the many individuals, including Plaintiffs, who had nothing to do with the fatalities and injuries.

72.     WPD's intent to create a false picture of the event is most evident in the manner that guns and knives were displayed to the media following the incident. The majority of the knives confiscated would not be considered illegal under § 46.02 of the Texas Penal Code, and were voluntarily relinquished upon requests from law enforcement soon after the shootings. Notwithstanding an individual's right to carry a legal knife, the knives were displayed to the media with blades extended in an effort to appear as menacing as possible.

73.     A similar storyline emerged regarding the number of guns seized after the incident, which was grossly overstated in initial reports. Police representatives omitted the truth that many of these guns were found outside the restaurant following the incident, stored safely on motorcycles or in other vehicles, as permitted by Texas law.

74.     Perhaps the most misleading characterization of the events was made days after the incident by Defendant Reyna when he implied that those arrested were

guilty because "if they're victims, then they shouldn't have *any* problem coming to law enforcement and cooperating... and, at least in the first round of interviews, we ain't getting that." This is blatantly false. A review of investigators' records documenting the interviews that were conducted with the detained bikers clearly establishes that the vast majority, including Plaintiffs, were completely cooperative during interviews, and voluntarily submitted to questioning and requests for forensics (volunteering DNA samples and gunshot residue testing) from law enforcement. Defendant Reyna knew of these facts at the time he made the above described public statement.

75.    Since the outset, law enforcement's narrative of the event as told to the public bears little resemblance to the actual facts.

## THE INDICTMENT

76.    On November 10, 2015, despite only convening for the first time earlier in the day to hear facts related to the Twin Peaks incident, a McLennan County Grand Jury indicted 106 individuals, including Plaintiffs, for the exact same crime of Engaging in Organized Criminal Activity with the Intent to Commit or Conspire to Commit Murder, Capital Murder, or Aggravated Assault. The indictment, like the probable cause affidavit, is identical for every single individual. To date, there has been no attempt to state with any particularity the facts on which the first degree felony against each Plaintiff is based. From a fill-in-the-name template probable cause affidavit, to a fill-in-the-name template Indictment, violations of Plaintiffs' constitutional rights continue.

**GRAND JURY DELIBERATIONS WERE TAINTED**

77.    The Grand Jury's deliberation that resulted in each Plaintiff's True Bill of Indictment was tainted by the use of wholly inaccurate and false information. The Grand Jury was misled by the presentment of materially misleading and false statements claiming each Plaintiff to have been a member of a criminal street gang at the time of the Twin Peaks incident, when in fact, they were not. Further, clear and unambiguous video evidence that would have proven each Plaintiff's lack of involvement in the Twin Peaks violence was intentionally withheld from the Grand Jury.

78.    Plaintiffs' counsel has requested from Defendants a transcript of the Grand Jury proceedings. According to counsel for Defendant Reyna, no transcript of the proceeding exists, nor were the proceedings recorded such that a transcript could be created. Despite the "secrecy" of the Grand Jury deliberations, numerous factual inferences can be drawn that demonstrate that the Grand Jury deliberations were tainted. They are as follows:

79.    Defendant Chavez testified before the Grand Jury. It is reasonable to believe that Defendant Chavez testified consistent with his sworn affidavit upon which the arrest warrant for each Plaintiff was issued. As outlined above, the probable cause affidavit contains false, and materially misleading statements.

80.    Because there is no other evidence that in any way link Plaintiffs to the violence that occurred at Twin Peaks on May 17, 2015, it is a reasonable inference that Defendant Chavez tainted the Grand Jury deliberations by repeating the same false

statements contained in his probable cause affidavit.

81.    It is a reasonable inference that Defendant Chavez testified to the Grand Jury consistent with his probable cause affidavit because Chavez testified to those same "facts" during one or more examining trials involving individuals arrested at Twin Peaks on or about May 17, 2015. Despite admitting a lack of personal knowledge of certain key facts that were contained in his probable cause affidavit, Chavez testified at one or more examining trials related to the Twin Peaks arrests that all individuals wearing certain patches and clothing were members of criminal street gangs. These statements were false when made at the examining trials, and would also be false when made to the Grand Jury.

82.    The indictments returned against each Plaintiff (and every other person against whom the DA has chosen to present a case) charges Plaintiffs with murder and assault, and includes the statement "And the Defendant did then and there commit the offense as a member of a criminal street gang." As discussed above, Plaintiffs were not, nor have they ever been, members of a criminal street gang.[2] This false and misleading evidence was originally sworn to by Defendant Chavez in his probable cause affidavit and was clearly repeated to the Grand Jury despite the total falsity of the statement. There is simply no logical or plausible explanation for the inclusion of this false statement in the indictment returned by the Grand Jury except that the Grand Jury was misled by the use of false and inaccurate testimony. The Grand Jury could not make such an allegation in the absence of testimony to that effect. It is a reasonable inference that Defendant Chavez provided the false information regarding membership in a

---

[2]  *See* ¶ 58 supra, which is incorporated herein by reference.

criminal street gang since it is nearly verbatim the language he swore to in his probable cause affidavit, and to what he testified to in one or more examining trials related to this incident.

83.    In addition to the false and misleading testimony presented to the Grand Jury by Defendant Chavez, Defendant Schwartz also appeared and is believed to have testified before the Grand Jury. It is a reasonable inference that he too provided false and misleading evidence to the Grand Jury since, like Chavez, he had testified on the same subject at one or more examining trials related to the Twin Peaks mass arrests. In multiple examining trials, Schwartz testified that individuals were conspiring with those who committed the actual violence by their mere presence at the COC meeting. Despite admissions at examining trials that he possessed no knowledge of direct participation in the violence of many of those arrested, he repeatedly swore that criminal conduct occurred because individuals who were merely present at the location were there in a "show of force" to support the violence. This assertion was categorically false when testified to in examining trials, and there is no reason to believe Schwartz testified differently before the Grand Jury. It was false because the vast majority that he claimed were there as a "show of force" had no prior knowledge that an incident was likely to occur, and have specifically denied similar allegations during interviews with law enforcement.

84. As noted previously, there is an abundance of CLEAR and UNAMBIGUOUS video evidence in this case, and it conclusively proves that each Plaintiff in no way, shape, or form participated in, or encouraged the violence that occurred at Twin Peaks.

In fact, Plaintiffs did the opposite. For several reasons, it is a reasonable inference that this key evidence was withheld from the Grand Jury. First, the theory that hundreds of bikers came from all over the state of Texas in a show of force is unequivocally debunked by the video evidence. The vast majority of those present IMMEDIATELY took cover and hid behind vehicles upon the first shots being fired. The actions depicted on the video evidence directly contradicts the sole theory of culpability upon which each Plaintiff's false arrest is based. Had this evidence been shown to the Grand Jury, it is reasonable to believe that Plaintiffs would not have been indicted.

85.    Second, it is a reasonable inference that the video evidence was withheld from the Grand Jury because they simply did not have time to consider this important evidence. Public statements by Defendant Reyna and others make it clear that the Grand Jury met concerning the Twin Peaks arrests for the first time on November 10, 2015. On that same day, the Grand Jury issued 106 true bills, and based on public statements made by Reyna, the Grand Jury issued indictments on every case that was presented.[3] It is significant to note that on January 27, 2016 (more than eight months after the Twin Peaks incident), District Attorney Reyna stated in a Motion for Continuance that the State would likely need another twelve months before it could sort through all the evidence and be ready for trial. Yet in a matter of a single work day, the Grand Jury was presented evidence and returned indictments against 106 separate individuals. All for the same crime, using identical fill-in-the-blank indictments, of

---

[3] Since that day, the Grand Jury convened on March 23, 2016 for half a day and returned another 48 indictments. To date, the Grand Jury has returned indictments on 154 of the 154 cases that have been presented. No witnesses were called to testify during the Grand Jury deliberation of March 23, 2016. Nevertheless, the Grand Jury returned 48 indictments.

course!

86.     The above description of the Grand Jury deliberations is necessary to dispel any notion that a "neutral intermediary" considered particularized evidence pertaining to Plaintiffs' arrests prior to issuing true bills of indictment. It is a reasonable inference that Defendant Chavez and Schwartz simply regurgitated the same false testimony that was sworn to in the probable cause affidavit or to which they had previously testified to in one or more examining trials, and that all video evidence that would have demonstrated the lack of probable cause to indict Plaintiff was withheld from the Grand Jury deliberations. In fact, Plaintiffs allege that no specific evidence concerning them was ever presented to the grand jury except Defendants' statement that he was a member of a criminal street gang. No gang database evidence was presented that would identify Plaintiffs as members of a criminal street gang because no such evidence exists.

87.     Further evidence that the Grand Jury's deliberation was tainted is the fact that in all 106 indictments issued on November 10, 2015 (including Plaintiffs') the list of those killed includes an individual named William Anderson, who in fact, was not killed at Twin Peaks and is very much alive to this day. The Grand Jury was so misled by the evidence presented that it indicted 106 people, including Plaintiffs, with Mr. Anderson's death, despite Mr. Anderson not being killed or injured in the Twin Peaks incident.

88.     During various examining trials, law enforcement witnesses, including Chavez and Schwartz, have continued to perpetuate the idea that motorcycle club

affiliation, jacket and vest patches, and other lawful clothing is evidence of membership in a criminal street gang. It is a reasonable inference that this same misleading, false information was presented to the Grand Jury in order to obtain the indictment of each Plaintiff.

89.    Since video evidence clearly proves that Plaintiffs did not directly participate in the violence, the only possible basis for the indictment would be pursuant to the law of parties. Despite not being a member of a criminal street gang, Defendants misled the Grand Jury by claiming Plaintiffs were in a criminal gang, when in fact, they were not. There is simply no other means by which the Grand Jury could have indicted Plaintiffs.

90.    Not only was video evidence that would have clearly shown an absence of probable cause to indict Plaintiffs available, that same video evidence was being used by law enforcement immediately after the incident to determine whether to return motorcycles and vehicles that were initially seized by law enforcement.

91.    The "evidence" presented to the Grand Jury was wholly inaccurate, misleading and as described in the preceding paragraphs, intentionally false and misleading in the most material ways. In fact, it amounted to nothing more than a rubber stamping of the absurd theory advanced by Defendants that has caused irreparable harm to Plaintiffs and many others, and has culminated in civil rights violations that are without precedent in this country.

# V. FACTS PERTAINING TO PLAINTIFFS

## John Wilson

92.    John Wilson is a resident of McLennan County, Texas. Plaintiff John Wilson is a small business owner and owns and operates a motorcycle shop in Waco, Texas. John Wilson is also the father of Jacob Wilson. The false arrest and incarceration has caused irreparable harm to Plaintiff's reputation. Since his business is directly tied to his reputation, that too has been irreparably harmed. Prior to the COC meeting at Twin Peaks, John Wilson was emphatic with other members of his motorcycle club that this was to be a peaceful meeting.

93.    Plaintiff John Wilson is a motorcycle enthusiast and is a member of the Cossacks Motorcycle Club of McLennan County.

94.    Mr. Wilson rode to the Twin Peaks in Waco with some of his fellow members for the purpose of attending the COC meeting and to socialize.

95.    Plaintiff was engaged in **completely lawful conduct** at all times relevant to the Twin Peaks incident.

96.    Plaintiff's membership in a motorcycle club was lawful and did not violate any laws of Texas or the United States.

97.    Plaintiff's attendance at the COC meeting on May 17, 2015, was lawful and did not violate any laws of Texas or the United States.

98.    All clothing worn by Plaintiff on May 17, 2015, including jackets, vests, t-shirts, and patches, was completely lawful and did not violate any laws of Texas or the United States.

99.    All stickers on Plaintiff's motorcycle were completely lawful and did not violate any laws of Texas or the United States.

100.    Plaintiff did not shoot, strike, or threaten any person on May 17, 2015.

101.    Plaintiff did not encourage anyone to shoot, strike, or threaten any person on May 17, 2015.

102.    Plaintiff's actions upon hearing gun shots were consistent with what 99% of the population would do – he immediately took cover to avoid being struck.

103.    In summary, Plaintiff had absolutely nothing to do with the tragic deaths and injuries that occurred on May 17, 2015, at Twin Peaks.

104.    The entire basis of Defendants' belief that probable cause existed to arrest and charge Plaintiff comes down to his presence at the Twin Peaks restaurant on May 17, 2015, his lawful affiliation with a motorcycle club, and the clothing that he was wearing.

105.    The probable cause affidavit signed by Manuel Chavez on May 18, 2015 **fails to identify even one single fact specific to Plaintiff to support probable cause for his arrest and incarceration**.

106.    Plaintiff's cell phone has been examined by law enforcement and contains no evidence of any illegal plan or desire to engage in illegal conduct before, during, or after May 17, 2015.

107.    Despite the lack of any indicia to establish probable cause, Plaintiff was arrested for Engaging in Organized Criminal Activity and his bond was initially set at

one million dollars ($1,000,000). Plaintiff spent 28 days in jail. He was able to post bail after his bond was lowered.

### Arnold

108.   John Arnold is a resident of McLennan County, Texas.

109.   Plaintiff Arnold is a motorcycle enthusiast and is a member of the Cossacks Motorcycle Club.

110.   Mr. Arnold rode to the Twin Peaks in Waco with some of his fellow members for the purpose of attending the COC meeting and to socialize.

111.   Plaintiff was engaged in **completely lawful conduct** at all times relevant to the Twin Peaks incident.

112.   Plaintiff's membership in a motorcycle club was lawful and did not violate any laws of Texas or the United States.

113.   Plaintiff's attendance at the COC meeting on May 17, 2015, was lawful and did not violate any laws of Texas or the United States.

114.   All clothing worn by Plaintiff on May 17, 2015, including jackets, vests, t-shirts, and patches, was completely lawful and did not violate any laws of Texas or the United States.

115.   All stickers on Plaintiff's motorcycle were completely lawful and did not violate any laws of Texas or the United States.

116.   Plaintiff did not shoot, strike, or threaten any person on May 17, 2015.

117.   Plaintiff did not encourage anyone to shoot, strike, or threaten any person on May 17, 2015.

118.    Plaintiff's actions upon hearing gun shots were consistent with what 99% of the population would do – he immediately took cover to avoid being struck.

119.    In summary, Plaintiff had absolutely nothing to do with the tragic deaths and injuries that occurred on May 17, 2015, at Twin Peaks.

120.    The entire basis of Defendants' belief that probable cause existed to arrest and charge Plaintiff comes down to his presence at the Twin Peaks restaurant on May 17, 2015, his lawful affiliation with a motorcycle club, and the clothing that he was wearing.

121.    The probable cause affidavit signed by Manuel Chavez on May 18, 2015 **fails to identify even one single fact specific to Plaintiff to support probable cause for his arrest and incarceration**.

122.    Plaintiff's cell phone has been examined by law enforcement and contains no evidence of any illegal plan or desire to engage in illegal conduct before, during, or after May 17, 2015.

123.    Despite the lack of any indicia to establish probable cause, Plaintiff was arrested for Engaging in Organized Criminal Activity and his bond was initially set at one million dollars ($1,000,000). Plaintiff spent 28 days in jail. He was able to post bail after his bond was lowered.

## Covey

124.    Roy Covey is a resident of Bosque County, Texas. Plaintiff Covey is a father of two and certified firefighter.

125.    Plaintiff Covey was not a member of any motorcycle club at the time of

the incident, although he was friends with several Cossack club members.

126.    Mr. Covey drove to the Twin Peaks in Waco with a friend for the purpose of attending the COC meeting and to socialize. Plaintiff Covey was in the patio area of the Twin Peaks. Upon hearing gunshots, Plaintiff immediately took cover. However, when a man was shot in front of Plaintiff, he dragged the man into the patio for cover and applied pressure to his wounds. Law enforcement eventually allowed Plaintiff to help transport the injured man to an ambulance.

127.    Plaintiff was engaged in **completely lawful conduct** at all times relevant to the Twin Peaks incident.

128.    Plaintiff's attendance at the COC meeting on May 17, 2015, was lawful and did not violate any laws of Texas or the United States.

129.    All clothing worn by Plaintiff on May 17, 2015, including jackets, vests, t-shirts, and patches, was completely lawful and did not violate any laws of Texas or the United States.

130.    All stickers on Plaintiff's vehicle were completely lawful and did not violate any laws of Texas or the United States.

131.    Plaintiff did not shoot, strike, or threaten any person on May 17, 2015.

132.    Plaintiff did not encourage anyone to shoot, strike, or threaten any person on May 17, 2015.

133.    Plaintiff's actions upon hearing gun shots were consistent with what 99% of the population would do – he immediately took cover to avoid being struck.

134.    In summary, Plaintiff had absolutely nothing to do with the tragic deaths and injuries that occurred on May 17, 2015, at Twin Peaks.

135.    The entire basis of Defendants' belief that probable cause existed to arrest and charge Plaintiff comes down to his presence at the Twin Peaks restaurant on May 17, 2015, his alleged affiliation with a motorcycle club, and the clothing that he was wearing.

136.    The probable cause affidavit signed by Manuel Chavez on May 18, 2015 **fails to identify even one single fact specific to Plaintiff to support probable cause for his arrest and incarceration**.

137.    Plaintiff's cell phone has been examined by law enforcement and contains no evidence of any illegal plan or desire to engage in illegal conduct before, during, or after May 17, 2015.

138.    Despite the lack of any indicia to establish probable cause, Plaintiff was arrested for Engaging in Organized Criminal Activity and his bond was initially set at one million dollars ($1,000,000). Plaintiff spent 30 days in jail. He was able to post bail after his bond was lowered.

### Ensey

139.    James Brent Ensey is a resident of Stephens County, Texas. Plaintiff is married and has two children.

140.    Plaintiff Ensey is a motorcycle enthusiast and is a member of the Cossacks Motorcycle Club of Parker County.

141.    Mr. Ensey rode to the Twin Peaks in Waco with some of his fellow

members for the purpose of attending the COC meeting and to socialize. Plaintiff Ensey was inside the Twin Peaks when he first heard gunfire, and he immediately took cover.

142.   Plaintiff was engaged in **completely lawful conduct** at all times relevant to the Twin Peaks incident.

143.   Plaintiff's membership in a motorcycle club was lawful and did not violate any laws of Texas or the United States.

144.   Plaintiff's attendance at the COC meeting on May 17, 2015, was lawful and did not violate any laws of Texas or the United States.

145.   All clothing worn by Plaintiff on May 17, 2015, including jackets, vests, t-shirts, and patches, was completely lawful and did not violate any laws of Texas or the United States.

146.   All stickers on Plaintiff's motorcycle were completely lawful and did not violate any laws of Texas or the United States.

147.   Plaintiff did not shoot, strike, or threaten any person on May 17, 2015.

148.   Plaintiff did not encourage anyone to shoot, strike, or threaten any person on May 17, 2015.

149.   Plaintiff's actions upon hearing gun shots were consistent with what 99% of the population would do – he immediately took cover to avoid being struck.

150.   In summary, Plaintiff had absolutely nothing to do with the tragic deaths and injuries that occurred on May 17, 2015, at Twin Peaks.

151.   The entire basis of Defendants' belief that probable cause existed to arrest and charge Plaintiff comes down to his presence at the Twin Peaks restaurant on May

17, 2015, his lawful affiliation with a motorcycle club, and the clothing that he was wearing.

152.    The probable cause affidavit signed by Manuel Chavez on May 18, 2015 **fails to identify even one single fact specific to Plaintiff to support probable cause for his arrest and incarceration**.

153.    Plaintiff's cell phone has been examined by law enforcement and contains no evidence of any illegal plan or desire to engage in illegal conduct before, during, or after May 17, 2015.

154.    Despite the lack of any indicia to establish probable cause, Plaintiff was arrested for Engaging in Organized Criminal Activity and his bond was initially set at one million dollars ($1,000,000). Plaintiff spent 33 days in jail. He was able to post bail after his bond was lowered.

## Kelleher

155.    Edgar Kelleher is a resident of Palo Pinto County, Texas. Plaintiff is married and a father of four. Mr. Kelleher is also a small business owner in the oil field service industry.

156.    Plaintiff Kelleher is a motorcycle enthusiast and is a member of the Cossacks Motorcycle Club.

157.    Mr. Kelleher rode to the Twin Peaks in Waco with some of his fellow members for the purpose of attending the COC meeting and to socialize.

158.    Plaintiff was engaged in **completely lawful conduct** at all times relevant to the Twin Peaks incident.

159.    Plaintiff's membership in a motorcycle club was lawful and did not violate any laws of Texas or the United States.

160.    Plaintiff's attendance at the COC meeting on May 17, 2015, was lawful and did not violate any laws of Texas or the United States.

161.    All clothing worn by Plaintiff on May 17, 2015, including jackets, vests, t-shirts, and patches, was completely lawful and did not violate any laws of Texas or the United States.

162.    All stickers on Plaintiff's motorcycle were completely lawful and did not violate any laws of Texas or the United States.

163.    Plaintiff did not shoot, strike, or threaten any person on May 17, 2015.

164.    Plaintiff did not encourage anyone to shoot, strike, or threaten any person on May 17, 2015.

165.    Plaintiff's actions upon hearing gun shots were consistent with what 99% of the population would do – he immediately took cover to avoid being struck.

166.    In summary, Plaintiff had absolutely nothing to do with the tragic deaths and injuries that occurred on May 17, 2015, at Twin Peaks.

167.    The entire basis of Defendants' belief that probable cause existed to arrest and charge Plaintiff comes down to his presence at the Twin Peaks restaurant on May 17, 2015, his lawful affiliation with a motorcycle club, and the clothing that he was wearing.

168.    The probable cause affidavit signed by Manuel Chavez on May 18, 2015 **fails to identify even one single fact specific to Plaintiff to support probable cause for**

**his arrest and incarceration**.

169.    Plaintiff's cell phone has been examined by law enforcement and contains no evidence of any illegal plan or desire to engage in illegal conduct before, during, or after May 17, 2015.

170.    Despite the lack of any indicia to establish probable cause, Plaintiff was arrested for Engaging in Organized Criminal Activity and his bond was initially set at one million dollars ($1,000,000). Plaintiff spent 16 days in jail. He was able to post bail after his bond was lowered.

## Logan

171.    Brian Logan is a resident of Maryland. Plaintiff is an honorably discharged veteran of the Navy and a dedicated father.

172.    Plaintiff Logan is a motorcycle enthusiast and was a member of the Cossacks Motorcycle Club.

173.    Mr. Logan rode to the Twin Peaks in Waco with some of his fellow members for the purpose of attending the COC meeting and to socialize.

174.    Plaintiff was engaged in **completely lawful conduct** at all times relevant to the Twin Peaks incident.

175.    Plaintiff's membership in a motorcycle club was lawful and did not violate any laws of Texas or the United States.

176.    Plaintiff's attendance at the COC meeting on May 17, 2015, was lawful and did not violate any laws of Texas or the United States.

177.    All clothing worn by Plaintiff on May 17, 2015, including jackets, vests, t-shirts, and patches, was completely lawful and did not violate any laws of Texas or the United States.

178.    All stickers on Plaintiff's motorcycle were completely lawful and did not violate any laws of Texas or the United States.

179.    Plaintiff did not shoot, strike, or threaten any person on May 17, 2015.

180.    Plaintiff did not encourage anyone to shoot, strike, or threaten any person on May 17, 2015.

181.    Plaintiff's actions upon hearing gun shots were consistent with what 99% of the population would do – he immediately took cover to avoid being struck.

182.    In summary, Plaintiff had absolutely nothing to do with the tragic deaths and injuries that occurred on May 17, 2015, at Twin Peaks.

183.    The entire basis of Defendants' belief that probable cause existed to arrest and charge Plaintiff comes down to his presence at the Twin Peaks restaurant on May 17, 2015, his lawful affiliation with a motorcycle club, and the clothing that he was wearing.

184.    The probable cause affidavit signed by Manuel Chavez on May 18, 2015 **fails to identify even one single fact specific to Plaintiff to support probable cause for his arrest and incarceration**.

185.    Plaintiff's cell phone has been examined by law enforcement and contains no evidence of any illegal plan or desire to engage in illegal conduct before, during, or after May 17, 2015.

186.    Despite the lack of any indicia to establish probable cause, Plaintiff was arrested for Engaging in Organized Criminal Activity and his bond was initially set at one million dollars ($1,000,000). Plaintiff spent 21 days in jail. He was able to post bail after his bond was lowered.

## Martin

187.    Terry S. Martin is a resident of Lubbock County, Texas.

188.    Plaintiff Martin is a motorcycle enthusiast and is a member of the Cossacks Motorcycle Club.

189.    Mr. Martin rode to the Twin Peaks in Waco with some of his fellow members for the purpose of attending the COC meeting and to socialize.

190.    Plaintiff was engaged in **completely lawful conduct** at all times relevant to the Twin Peaks incident.

191.    Plaintiff's membership in a motorcycle club was lawful and did not violate any laws of Texas or the United States.

192.    Plaintiff's attendance at the COC meeting on May 17, 2015, was lawful and did not violate any laws of Texas or the United States.

193.    All clothing worn by Plaintiff on May 17, 2015, including jackets, vests, t-shirts, and patches, was completely lawful and did not violate any laws of Texas or the United States.

194.    All stickers on Plaintiff's motorcycle were completely lawful and did not violate any laws of Texas or the United States.

195.    Plaintiff did not shoot, strike, or threaten any person on May 17, 2015.

196.    Plaintiff did not encourage anyone to shoot, strike, or threaten any person on May 17, 2015.

197.    Plaintiff's actions upon hearing gun shots were consistent with what 99% of the population would do – he immediately took cover to avoid being struck.

198.    In summary, Plaintiff had absolutely nothing to do with the tragic deaths and injuries that occurred on May 17, 2015, at Twin Peaks.

199.    The entire basis of Defendants' belief that probable cause existed to arrest and charge Plaintiff comes down to his presence at the Twin Peaks restaurant on May 17, 2015, his lawful affiliation with a motorcycle club, and the clothing that he was wearing.

200.    The probable cause affidavit signed by Manuel Chavez on May 18, 2015 **fails to identify even one single fact specific to Plaintiff to support probable cause for his arrest and incarceration**.

201.    Plaintiff's cell phone has been examined by law enforcement and contains no evidence of any illegal plan or desire to engage in illegal conduct before, during, or after May 17, 2015.

202.    Despite the lack of any indicia to establish probable cause, Plaintiff was arrested for Engaging in Organized Criminal Activity and his bond was initially set at one million dollars ($1,000,000). Plaintiff spent over 30 days in jail. He was able to post bail after his bond was lowered.

## Robertson

203.    Robert Robertson is a resident of Tarrant County, Texas. Plaintiff is married and has three children.

204.    Plaintiff Robertson is a motorcycle enthusiast and is a member of the Cossacks Motorcycle Club of Ellis County.

205.    Mr. Robertson rode to the Twin Peaks in Waco with some of his fellow members for the purpose of attending the COC meeting and to socialize.

206.    Plaintiff was engaged in **completely lawful conduct** at all times relevant to the Twin Peaks incident.

207.    Plaintiff's membership in a motorcycle club was lawful and did not violate any laws of Texas or the United States.

208.    Plaintiff's attendance at the COC meeting on May 17, 2015, was lawful and did not violate any laws of Texas or the United States.

209.    All clothing worn by Plaintiff on May 17, 2015, including jackets, vests, t-shirts, and patches, was completely lawful and did not violate any laws of Texas or the United States.

210.    All stickers on Plaintiff's motorcycle were completely lawful and did not violate any laws of Texas or the United States.

211.    Plaintiff did not shoot, strike, or threaten any person on May 17, 2015.

212.    Plaintiff did not encourage anyone to shoot, strike, or threaten any person on May 17, 2015.

213.    Plaintiff's actions upon hearing gun shots were consistent with what 99% of the population would do – he immediately took cover to avoid being struck.

214.    In summary, Plaintiff had absolutely nothing to do with the tragic deaths and injuries that occurred on May 17, 2015, at Twin Peaks.

215.    The entire basis of Defendants' belief that probable cause existed to arrest and charge Plaintiff comes down to his presence at the Twin Peaks restaurant on May 17, 2015, his lawful affiliation with a motorcycle club, and the clothing that he was wearing.

216.    The probable cause affidavit signed by Manuel Chavez on May 18, 2015 **fails to identify even one single fact specific to Plaintiff to support probable cause for his arrest and incarceration**.

217.    Plaintiff's cell phone has been examined by law enforcement and contains no evidence of any illegal plan or desire to engage in illegal conduct before, during, or after May 17, 2015.

218.    Despite the lack of any indicia to establish probable cause, Plaintiff was arrested for Engaging in Organized Criminal Activity and his bond was initially set at one million dollars ($1,000,000). Plaintiff spent 30 days in jail. He was able to post bail after his bond was lowered.

### Jacob Wilson

219.    Jacob Wilson is a resident of McLennan County, Texas and the son of Plaintiff John Wilson. Jacob works for his dad at Legends Motorcycle in Waco, Texas and is also a father himself.

220.    Plaintiff Jacob Wilson is a motorcycle enthusiast and is a member of the Cossacks Motorcycle Club of McLennan County.

221.    Jacob Wilson rode to the Twin Peaks in Waco with some of his fellow members for the purpose of attending the COC meeting and to socialize.

222.    Plaintiff was engaged in **completely lawful conduct** at all times relevant to the Twin Peaks incident.

223.    Plaintiff's membership in a motorcycle club was lawful and did not violate any laws of Texas or the United States.

224.    Plaintiff's attendance at the COC meeting on May 17, 2015, was lawful and did not violate any laws of Texas or the United States.

225.    All clothing worn by Plaintiff on May 17, 2015, including jackets, vests, t-shirts, and patches, was completely lawful and did not violate any laws of Texas or the United States.

226.    All stickers on Plaintiff's motorcycle were completely lawful and did not violate any laws of Texas or the United States.

227.    Plaintiff did not shoot, strike, or threaten any person on May 17, 2015.

228.    Plaintiff did not encourage anyone to shoot, strike, or threaten any person on May 17, 2015.

229.    Plaintiff's actions upon hearing gun shots were consistent with what 99% of the population would do – he immediately took cover to avoid being struck.

230.    In summary, Plaintiff had absolutely nothing to do with the tragic deaths and injuries that occurred on May 17, 2015, at Twin Peaks.

231.    The entire basis of Defendants' belief that probable cause existed to arrest and charge Plaintiff comes down to his presence at the Twin Peaks restaurant on May 17, 2015, his lawful affiliation with a motorcycle club, and the clothing that he was wearing.

232.    The probable cause affidavit signed by Manuel Chavez on May 18, 2015 **fails to identify even one single fact specific to Plaintiff to support probable cause for his arrest and incarceration**.

233.    Plaintiff's cell phone has been examined by law enforcement and contains no evidence of any illegal plan or desire to engage in illegal conduct before, during, or after May 17, 2015.

234.    Despite the lack of any indicia to establish probable cause, Plaintiff was arrested for Engaging in Organized Criminal Activity and his bond was initially set at one million dollars ($1,000,000). Plaintiff spent 37 days in jail. He was able to post bail after his bond was lowered.

## Bradford

235.    Mitchell Bradford is a resident of Palo Pinto County, Texas.

236.    Plaintiff Mitchell Bradford is a motorcycle enthusiast and is a member of the Cossacks Motorcycle Club.

237.    Mitchell Bradford rode to the Twin Peaks in Waco with some of his fellow members for the purpose of attending the COC meeting and to socialize. Plaintiff Bradford heard a commotion outside of the Twin Peaks restaurant and then heard gun fire. Plaintiff Bradford immediately took cover and crawled back inside the restaurant.

238.    Plaintiff was engaged in **completely lawful conduct** at all times relevant to the Twin Peaks incident.

239.    Plaintiff's membership in a motorcycle club was lawful and did not violate any laws of Texas or the United States.

240.    Plaintiff's attendance at the COC meeting on May 17, 2015, was lawful and did not violate any laws of Texas or the United States.

241.    All clothing worn by Plaintiff on May 17, 2015, including jackets, vests, t-shirts, and patches, was completely lawful and did not violate any laws of Texas or the United States.

242.    All stickers on Plaintiff's motorcycle were completely lawful and did not violate any laws of Texas or the United States.

243.    Plaintiff did not shoot, strike, or threaten any person on May 17, 2015.

244.    Plaintiff did not encourage anyone to shoot, strike, or threaten any person on May 17, 2015.

245.    Plaintiff's actions upon hearing gun shots were consistent with what 99% of the population would do – he immediately took cover to avoid being struck.

246.    In summary, Plaintiff had absolutely nothing to do with the tragic deaths and injuries that occurred on May 17, 2015, at Twin Peaks.

247.    The entire basis of Defendants' belief that probable cause existed to arrest and charge Plaintiff comes down to his presence at the Twin Peaks restaurant on May 17, 2015, his lawful affiliation with a motorcycle club, and the clothing that he was wearing.

248.    The probable cause affidavit signed by Manuel Chavez on May 18, 2015 **fails to identify even one single fact specific to Plaintiff to support probable cause for his arrest and incarceration**.

249.    Plaintiff's cell phone has been examined by law enforcement and contains no evidence of any illegal plan or desire to engage in illegal conduct before, during, or after May 17, 2015.

250.    Despite the lack of any indicia to establish probable cause, Plaintiff was arrested for Engaging in Organized Criminal Activity and his bond was initially set at one million dollars ($1,000,000). Plaintiff spent over 3 weeks in jail. He was able to post bail after his bond was lowered.

### Luther

251.    Richard Luther is a resident of Dallas County, Texas.

252.    Plaintiff Richard Luther is a motorcycle enthusiast and is a member of the Cossacks Motorcycle Club of Collin County.

253.    Richard Luther rode to the Twin Peaks in Waco with some of his fellow members for the purpose of attending the COC meeting and to socialize. Upon hearing gunfire, Plaintiff Luther immediately got down on the ground to take cover and crawled back into the restaurant.

254.    Plaintiff was engaged in **completely lawful conduct** at all times relevant to the Twin Peaks incident.

255.    Plaintiff's membership in a motorcycle club was lawful and did not violate any laws of Texas or the United States.

256.    Plaintiff's attendance at the COC meeting on May 17, 2015, was lawful and did not violate any laws of Texas or the United States.

257.    All clothing worn by Plaintiff on May 17, 2015, including jackets, vests, t-shirts, and patches, was completely lawful and did not violate any laws of Texas or the United States.

258.    All stickers on Plaintiff's motorcycle were completely lawful and did not violate any laws of Texas or the United States.

259.    Plaintiff did not shoot, strike, or threaten any person on May 17, 2015.

260.    Plaintiff did not encourage anyone to shoot, strike, or threaten any person on May 17, 2015.

261.    Plaintiff's actions upon hearing gun shots were consistent with what 99% of the population would do – he immediately took cover to avoid being struck.

262.    In summary, Plaintiff had absolutely nothing to do with the tragic deaths and injuries that occurred on May 17, 2015, at Twin Peaks.

263.    The entire basis of Defendants' belief that probable cause existed to arrest and charge Plaintiff comes down to his presence at the Twin Peaks restaurant on May 17, 2015, his lawful affiliation with a motorcycle club, and the clothing that he was wearing.

264.    The probable cause affidavit signed by Manuel Chavez on May 18, 2015 **fails to identify even one single fact specific to Plaintiff to support probable cause for his arrest and incarceration**.

265.     Plaintiff's cell phone has been examined by law enforcement and contains no evidence of any illegal plan or desire to engage in illegal conduct before, during, or after May 17, 2015.

266.     Despite the lack of any indicia to establish probable cause, Plaintiff was arrested for Engaging in Organized Criminal Activity and his bond was initially set at one million dollars ($1,000,000). Plaintiff spent 33 days in jail. He was able to post bail after his bond was lowered.

## Craft

267.     John Craft  is a resident of Bell County, Texas.

268.     Plaintiff John Craft is a motorcycle enthusiast and is a member of the Cossacks Motorcycle Club of Bell County.

269.     John Craft rode to the Twin Peaks in Waco with some of his fellow members for the purpose of attending the COC meeting and to socialize. Upon hearing gunfire, Plaintiff Craft immediately took cover.

270.     Plaintiff was engaged in **completely lawful conduct** at all times relevant to the Twin Peaks incident.

271.     Plaintiff's membership in a motorcycle club was lawful and did not violate any laws of Texas or the United States.

272.     Plaintiff's attendance at the COC meeting on May 17, 2015, was lawful and did not violate any laws of Texas or the United States.

273.     All clothing worn by Plaintiff on May 17, 2015, including jackets, vests, t-shirts, and patches, was completely lawful and did not violate any laws of Texas or the

United States.

274.    All stickers on Plaintiff's motorcycle were completely lawful and did not violate any laws of Texas or the United States.

275.    Plaintiff did not shoot, strike, or threaten any person on May 17, 2015.

276.    Plaintiff did not encourage anyone to shoot, strike, or threaten any person on May 17, 2015.

277.    Plaintiff's actions upon hearing gun shots were consistent with what 99% of the population would do – he immediately took cover to avoid being struck.

278.    In summary, Plaintiff had absolutely nothing to do with the tragic deaths and injuries that occurred on May 17, 2015, at Twin Peaks.

279.    The entire basis of Defendants' belief that probable cause existed to arrest and charge Plaintiff comes down to his presence at the Twin Peaks restaurant on May 17, 2015, his lawful affiliation with a motorcycle club, and the clothing that he was wearing.

280.    The probable cause affidavit signed by Manuel Chavez on May 18, 2015 **fails to identify even one single fact specific to Plaintiff to support probable cause for his arrest and incarceration**.

281.    Plaintiff's cell phone has been examined by law enforcement and contains no evidence of any illegal plan or desire to engage in illegal conduct before, during, or after May 17, 2015.

282.    Despite the lack of any indicia to establish probable cause, Plaintiff was arrested for Engaging in Organized Criminal Activity and his bond was initially set at

one million dollars ($1,000,000). Plaintiff spent over 3 weeks in jail. He was able to post bail after his bond was lowered.

### Johnson

283.    Daniel Johnson is a resident of McLennan County, Texas. Mr. Johnson lost his job as a truck driver as a result of his false arrest.

284.    Plaintiff Daniel Johnson is a motorcycle enthusiast and is a member of the Cossacks Motorcycle Club.

285.    Daniel Johnson rode to the Twin Peaks in Waco with some of his fellow members for the purpose of attending the COC meeting and to socialize. Upon hearing gunfire, Plaintiff Johnson ran and took cover inside the restaurant.

286.    Plaintiff was engaged in **completely lawful conduct** at all times relevant to the Twin Peaks incident.

287.    Plaintiff's membership in a motorcycle club was lawful and did not violate any laws of Texas or the United States.

288.    Plaintiff's attendance at the COC meeting on May 17, 2015, was lawful and did not violate any laws of Texas or the United States.

289.    All clothing worn by Plaintiff on May 17, 2015, including jackets, vests, t-shirts, and patches, was completely lawful and did not violate any laws of Texas or the United States.

290.    All stickers on Plaintiff's motorcycle were completely lawful and did not violate any laws of Texas or the United States.

291.    Plaintiff did not shoot, strike, or threaten any person on May 17, 2015.

292.    Plaintiff did not encourage anyone to shoot, strike, or threaten any person on May 17, 2015.

293.    Plaintiff's actions upon hearing gun shots were consistent with what 99% of the population would do – he immediately took cover to avoid being struck.

294.    In summary, Plaintiff had absolutely nothing to do with the tragic deaths and injuries that occurred on May 17, 2015, at Twin Peaks.

295.    The entire basis of Defendants' belief that probable cause existed to arrest and charge Plaintiff comes down to his presence at the Twin Peaks restaurant on May 17, 2015, his lawful affiliation with a motorcycle club, and the clothing that he was wearing.

296.    The probable cause affidavit signed by Manuel Chavez on May 18, 2015 **fails to identify even one single fact specific to Plaintiff to support probable cause for his arrest and incarceration**.

297.    Plaintiff's cell phone has been examined by law enforcement and contains no evidence of any illegal plan or desire to engage in illegal conduct before, during, or after May 17, 2015.

298.    Despite the lack of any indicia to establish probable cause, Plaintiff was arrested for Engaging in Organized Criminal Activity and his bond was initially set at one million dollars ($1,000,000). Plaintiff spent over 30 days in jail. He was able to post bail after his bond was lowered.

### Dillard

299.    Jason Dillard is a resident of Smith County, Texas.

300.    Plaintiff Jason Dillard is a motorcycle enthusiast and is a member of the Cossacks Motorcycle Club of Rusk County.

301.    Jason Dillard rode to the Twin Peaks in Waco with some of his fellow members for the purpose of attending the COC meeting and to socialize. Upon hearing gunfire, Plaintiff Dillard took to the ground and crawled away for cover.

302.    Plaintiff was engaged in **completely lawful conduct** at all times relevant to the Twin Peaks incident.

303.    Plaintiff's membership in a motorcycle club was lawful and did not violate any laws of Texas or the United States.

304.    Plaintiff's attendance at the COC meeting on May 17, 2015, was lawful and did not violate any laws of Texas or the United States.

305.    All clothing worn by Plaintiff on May 17, 2015, including jackets, vests, t-shirts, and patches, was completely lawful and did not violate any laws of Texas or the United States.

306.    All stickers on Plaintiff's motorcycle were completely lawful and did not violate any laws of Texas or the United States.

307.    Plaintiff did not shoot, strike, or threaten any person on May 17, 2015.

308.    Plaintiff did not encourage anyone to shoot, strike, or threaten any person on May 17, 2015.

309.    Plaintiff's actions upon hearing gun shots were consistent with what 99% of the population would do – he immediately took cover to avoid being struck.

310.    In summary, Plaintiff had absolutely nothing to do with the tragic deaths and injuries that occurred on May 17, 2015, at Twin Peaks.

311.    The entire basis of Defendants' belief that probable cause existed to arrest and charge Plaintiff comes down to his presence at the Twin Peaks restaurant on May 17, 2015, his lawful affiliation with a motorcycle club, and the clothing that he was wearing.

312.    The probable cause affidavit signed by Manuel Chavez on May 18, 2015 **fails to identify even one single fact specific to Plaintiff to support probable cause for his arrest and incarceration**.

313.    Plaintiff's cell phone has been examined by law enforcement and contains no evidence of any illegal plan or desire to engage in illegal conduct before, during, or after May 17, 2015.

314.    Despite the lack of any indicia to establish probable cause, Plaintiff was arrested for Engaging in Organized Criminal Activity and his bond was initially set at one million dollars ($1,000,000). Plaintiff spent 30 days in jail. He was able to post bail after his bond was lowered.

### Atterbury

315.    Ronald Atterbury is a resident of Coryell County, Texas.

316.    Plaintiff Ronald Atterbury is a motorcycle enthusiast and is a member of the Cossacks Motorcycle Club.

317.    Ronald Atterbury rode to the Twin Peaks in Waco with some of his fellow members for the purpose of attending the COC meeting and to socialize. Upon hearing

gunfire, Plaintiff Atterbury immediately took cover.

318.    Plaintiff was engaged in **completely lawful conduct** at all times relevant to the Twin Peaks incident.

319.    Plaintiff's membership in a motorcycle club was lawful and did not violate any laws of Texas or the United States.

320.    Plaintiff's attendance at the COC meeting on May 17, 2015, was lawful and did not violate any laws of Texas or the United States.

321.    All clothing worn by Plaintiff on May 17, 2015, including jackets, vests, t-shirts, and patches, was completely lawful and did not violate any laws of Texas or the United States.

322.    All stickers on Plaintiff's motorcycle were completely lawful and did not violate any laws of Texas or the United States.

323.    Plaintiff did not shoot, strike, or threaten any person on May 17, 2015.

324.    Plaintiff did not encourage anyone to shoot, strike, or threaten any person on May 17, 2015.

325.    Plaintiff's actions upon hearing gun shots were consistent with what 99% of the population would do – he immediately took cover to avoid being struck.

326.    In summary, Plaintiff had absolutely nothing to do with the tragic deaths and injuries that occurred on May 17, 2015, at Twin Peaks.

327.    The entire basis of Defendants' belief that probable cause existed to arrest and charge Plaintiff comes down to his presence at the Twin Peaks restaurant on May

17, 2015, his lawful affiliation with a motorcycle club, and the clothing that he was wearing.

328.    The probable cause affidavit signed by Manuel Chavez on May 18, 2015 **fails to identify even one single fact specific to Plaintiff to support probable cause for his arrest and incarceration**.

329.    Plaintiff's cell phone has been examined by law enforcement and contains no evidence of any illegal plan or desire to engage in illegal conduct before, during, or after May 17, 2015.

330.    Despite the lack of any indicia to establish probable cause, Plaintiff was arrested for Engaging in Organized Criminal Activity and his bond was initially set at one million dollars ($1,000,000). Plaintiff spent over three weeks in jail. He was able to post bail after his bond was lowered.

## VI. CAUSES OF ACTION

### 42 U.S.C. § 1983 – 4th Amendment Violation
### pursuant to *Malley v. Briggs*

331.    Paragraphs 1-330 are incorporated herein by reference.

332.    Plaintiffs had a clearly established Constitutional right to be free from unlawful arrest. As a direct result of Defendants' conduct, Plaintiffs were falsely arrested and charged with Engaging in Organized Criminal Activity, despite the absence of probable cause to establish that he had committed a crime. Defendants' conduct, as described above, deprived each Plaintiff of his right to be secure in his person against unreasonable seizure, in violation of the Fourth Amendment of the Constitution of the United States and 42 U.S.C. § 1983.

333.    The Fourth Amendment of the U.S. Constitution states,

"[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, **and no warrants shall issue, but upon probable cause**, supported by oath or affirmation, and **particularly describing** the place to be searched, and the persons or things to be seized." (*Emphasis added.*)

As the Supreme Court of the United States has plainly stated, "**[w]here the standard is probable cause, a**... **seizure of a person must be supported by probable cause particularized with respect to that person**." *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979).[4]

334.    Plaintiffs plead that Defendants Stroman, Lanning, Reyna, Chavez, Rogers, Swanton, Schwartz, and Frost knowingly and intentionally, or with reckless disregard for the truth, caused a facially deficient, fill-in-the-name template affidavit, completely lacking in particularized facts against them to be presented to the Magistrate Judge for the purpose of obtaining an arrest warrant.[5]

335.    Further, Defendant Chavez is liable to Plaintiffs because he knowingly and intentionally, or with reckless disregard for the truth, presented a facially deficient, fill-in-the-name template affidavit, completely lacking in particularized facts against Plaintiffs to be presented to the Magistrate Judge for the purpose of obtaining arrest

---

[4]  *See also Maryland v. Pringle*, 540 U.S. 366, 371 (2003) ("...**the belief of guilt must be particularized with respect to the person to be searched or seized.**"); *Trapper v. North Carolina*, 451 U.S. 997, 1000 (1981); *Michigan v. Summers*, 452 U.S. 692, 695, n. 4 (1981); *U.S. v. Hearn*, 563 F.3d 95, 103 (5th Cir. 2009) (quoting *Ybarra*, 444 U.S. at 91); *U.S. v. Zavala*, 541 F.3d 562, 575 (5th Cir. 2008); *Williams v. Kaufman Co.*, 352 F.3d 994, 1003 (5th Cir. 2003) (quoting *Ybarra*, 444 U.S. at 91); *Merchant v. Bauer*, 677 F.3d 656, 666 (4th Cir. 2012) ("**The Supreme Court has emphasized that '[w]here the standard is probable cause, a search or seizure of a person must be supported by probable cause particularized with respect to that person.'**"); *Hawkins v. Mitchell, et al*, 983, 994 (7th Cir. 2014); *U.S. v. Ojeda-Ramos*, 455 F.3d 1178, 1181 (10th Cir. 2006) (quoting *Ybarra*, 444 U.S. at 91); *U.S. v. Guzman*, SA-13-CR-89-DAE (W.D. Tex. 2013); *Dinler v. City of New York*, 2012 WL 4513352 *6 (S.D.N.Y 2012) ("**The Fourth Amendment does not recognize guilty by association**.").

[5] See *supra* ¶¶ 55 and 68 for specific, detailed allegations of Defendants' conduct and why that conduct is willful, intentional, or with reckless disregard.

---

warrants. A police officer is not entitled to qualified immunity when he submits a warrant application that is so lacking in indicia of probable cause as to render official belief in its existence unreasonable. *Malley v. Briggs*, 475 U. S. 335, 345, 106 S. Ct. 1092, 1098, 89 L.Ed.2d 271 (1986). As noted in footnote 7, this principle has been re-established time and again. The Fifth Circuit has held likewise. No reasonable police officer or law enforcement actor could reasonably have believed the law was otherwise, or that the affidavit in question established probable cause against Plaintiffs.

336.    Because the template affidavits regarding Plaintiffs lack assertions of fact that, even if true, would establish probable cause, Defendants have each, individually and as a group, violated Plaintiffs' Fourth Amendment rights.

337.    "The Fourth Amendment directs that 'no Warrants shall issue, but upon probable cause... and particularly describing the place to be searched, and the persons or things to be seized.' Thus, 'open-ended' or 'general' warrants are constitutionally prohibited." *Ybarra v. Illinois*, 444 U.S. 85, 92 n. 4 (1979). It was well settled law in this country prior to May 17, 2015 that use of a general warrant application was prohibited. Defendants' actions effectively constitute the use of a general warrant prohibited by the Constitution and decades of United States Supreme Court case law.

338.    As set forth in *Malley v. Briggs*, and its progeny, the Plaintiffs' Fourth Amendment rights were violated when a probable cause affidavit was presented for the purpose of obtaining an arrest warrant that was so lacking in indicia of probable cause as to render official belief in existence of probable cause "unreasonable."

339.    The affidavit, attached as Exhibit 1 to this Complaint, contains identical

language to the affidavits used to establish probable cause against Plaintiffs, and is incorporated herein by reference. The plain language of the affidavit indicates that it does not contain a single particularized assertion of fact against any Plaintiff that would establish a reasonable belief that any Plaintiff has committed a criminal offense.

340.    As a direct result of Defendants' conduct and actions, Plaintiffs were deprived of their constitutional rights all to their damage.

### 42 U.S.C. § 1983 – 4th Amendment Violation
### pursuant to *Franks v. Delaware*

341.    Paragraphs 1-340 are incorporated herein by reference.

342.    In the alternative, Plaintiffs plead civil liability against Defendants based on a "*Franks*" violation. *See Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978). *See also Hale v. Fish*, 899 F.2d 390, 400 n.3 (5th Cir. 1990). Defendants Stroman, Lanning, Reyna, Chavez, Rogers, Swanton, Schwartz, and Frost knowingly and intentionally, or with reckless disregard for the truth, caused an affidavit against each Plaintiff to be presented to the Magistrate Judge that each knew to be materially false and misleading.[6] Further, Defendant Chavez is liable to Plaintiffs because he knowingly and intentionally, or with reckless disregard for the truth, swore to a probable cause affidavit against Plaintiffs that he knew to be materially false and misleading, and presented it to the Magistrate Judge.

343.    Defendant Chavez swore under oath that he had personal knowledge of the information set forth in the probable cause affidavit. He did not.

---

[6] See *supra* ¶¶ 55 and 68 for specific, detailed allegations of Defendants' conduct and why that conduct is willful, intentional, or with reckless disregard.

344.    By indicating that Plaintiffs were members of criminal street gangs, when in fact they were not, and when there was no such evidence of gang membership, Defendants Rogers, Swanton, Schwartz, and Frost caused a warrant to be issued that would otherwise have lacked any factual basis for probable cause.

345.    The affidavit falsely states that each Plaintiff is "a member of a criminal street gang." That statement is categorically *false*. It is an indisputable fact that Defendants did not possess any reliable particularized information to indicate that Plaintiffs themselves were members of a criminal street gang on or before the date such fact was sworn to by Defendant Chavez. Plaintiffs were not, and never have been, members of a criminal street gang.

346.    Further, the probable cause affidavit states, "[a]fter the altercation, the subject was apprehended at the scene, while wearing common identifying distinctive signs or symbols **or** had an identifiable leadership or continuously **or regularly associate in the commission of criminal activities**." These statements are false and misleading and were known to be false and misleading by Defendant Chavez at the time he swore to such. Defendants offer no specific facts of any nature that Plaintiffs regularly associated in the commission of criminal activities.[7]  In fact, the probable cause affidavits misstate an essential element of the definition of "criminal street gang". TEXAS PENAL CODE § 71.01(d) states that "'Criminal street gang' means three or more persons having a common identifying sign or symbol or an identifiable leadership **who continuously or regularly associate in the commission of criminal activities**."  There is

---

[7] Plaintiffs categorically deny that they continuously or regularly associated in the commission of criminal activities.

no "or" before "who continuously or regularly . . ." The last phrase MUST be proven as an essential element of the definition.  The omission of this essential element, or language suggesting that it is not an essential element, is misleading on its face.  Since Defendant Chavez and Defendant Schwartz testified before the Grand Jury, it is reasonable to believe that Defendant Chavez and Defendant Schwartz testified consistent with the probable cause affidavit.  As outlined above, the probable cause affidavit contains false and materially misleading statements, or it misled the Grand Jury by suggesting that the definition of "criminal street gang" is different than actually stated in the Penal Code.

347.    Information omitted from the probable cause affidavit by Defendants would have negated probable cause. Despite a duty to include information that weighs against probable cause, Defendants knowingly and intentionally, or with reckless disregard for the truth, failed to reference the complete lack of any particularized evidence connecting Plaintiffs to the deaths or injuries that occurred at Twin Peaks. Further, the affidavit fails to reference the indisputable video evidence that is completely contrary to the notion that Plaintiffs planned, participated, or engaged in criminal conduct.

348.    Since at least *Franks v. Delaware,* and as re-affirmed by the Fifth Circuit in *Hale v. Fish*, police officers and law enforcement officials have known that willful, intentional, and/or reckless misrepresentations made for the purpose of establishing probable cause violate an individual's Fourth Amendment rights.  As a direct result of

Defendants' conduct and actions, Plaintiffs were wrongfully arrested even though probable cause did not exist.

### 42 U.S.C. § 1983 – 14th Amendment Violation

349.    Paragraphs 1-348 are incorporated herein by reference.

350.    If it is determined that a Fourth Amendment violation is not sustainable, Plaintiffs alternatively assert a violation of their Due Process rights under the Fourteenth Amendment to be free from unlawful arrest as a result of false and misleading statements that were knowingly, or with reckless disregard included in the probable cause affidavit.  The Due Process Clause of the Fourteenth Amendment was intended to prevent government from abusing its power, or employing it as an instrument of oppression.

351.    Specifically, Plaintiffs have rights guaranteed by the Fourteenth Amendment not to have law enforcement deliberately fabricate evidence, including the insertion of facts in affidavits and arrest documents (and provide testimony based on those "facts" to secure an indictment), that Defendants  know to be false.

352.    Here, Defendants knew there was no basis for the claims that Plaintiffs were members of a criminal street gang who committed or conspired to commit murder, capital murder, or aggravated assault. By inserting such claims in the probable cause affidavit and other official documents related to Plaintiffs' arrests, Defendants violated Plaintiffs' Fourteenth Amendment rights. This is conduct sufficient to shock the conscience for substantive due process purposes.

353.    The doctrine set forth by the Fifth Circuit in *Cole v. Carson*, 802 F.3d 752 (5th Cir. 2015) is hereby invoked and pled.

### 42 U.S.C. § 1983 – Conspiracy

354.    Paragraphs 1-353 are incorporated herein by reference.

355.    In the hours and days immediately following the incident, Defendants Stroman, Chavez, Reyna, Lanning, Rogers, Swanton, Schwartz, and Frost entered into a conspiracy to deprive Plaintiffs of their right to be free from unlawful seizure and incarceration in violation of his Fourth Amendment rights.  Defendants acted in concert either to orchestrate or to carry out the illegal seizure and cause the illegal arrest and incarceration described in this Complaint when they knew there was no probable cause to arrest them or to charge them with the offenses of Engaging in Organized Criminal Activity.  Defendants are liable to Plaintiffs for their violations of the Fourth Amendment under 42 U.S.C. § 1983.

356.    As described above, Defendants Stroman, Chavez, Reyna, Lanning, Rogers, Swanton, Schwartz, and Frost caused a warrant to be issued against Plaintiffs based on a false or deficient probable cause affidavits that Defendants knew to be false or deficient.

357.    Defendants were aware that Chavez was swearing to false statements for the purpose of obtaining an arrest warrant yet took no action to stop him.  In fact, as described above, they encouraged Chavez despite knowledge of video evidence that directly contradicted any reasonable belief that Plaintiffs had committed a crime.  Defendants Reyna, Stroman, Lanning, Rogers, Swanton, Schwartz, and Frost's

encouragement of Chavez is evident in that Defendants met together on May 17 and May 18 to discuss this very issue and records indicate full knowledge and acquiescence by all Defendants. Public statements by Stroman, Reyna, and Swanton further confirm Defendants' awareness of the actions taken to cause Plaintiffs to be arrested without probable cause.

358.    The conspiracy involved state action, as Defendants Stroman, Chavez, Reyna, Lanning, Rogers, Swanton, Schwartz, and Frost acted under color of the statutes, customs, ordinances, and usage of the State of Texas.

359.    As a direct result of Defendants' illegal conduct, Plaintiffs were deprived of their constitutional rights, all to their damages.

**Defendant Reyna is not entitled to immunity.**

360.    Defendant Reyna investigated the scene within hours of the incident, took photographs of the scene, reviewed information as it became known, and in all respects inserted himself in the role of an investigator/detective. Defendant Reyna was not acting as an advocate in assisting with the mere preparation of the affidavit for an arrest warrant, but rather involved himself in the investigative phase of the case **prior to a determination of probable cause**, and thus, is not entitled to absolute immunity. Legal advice by Reyna to police and other law enforcement officials was provided **during the investigative phase**. Defendant Reyna involved himself in the decision to arrest when he called the meeting described above and changed the course of earlier decisions to release most of those detained, including Plaintiffs. In fact, it was Chief Stroman, Reyna, and Lanning who ultimately decided to charge each individual who met certain

established criteria related to club affiliation and/or clothing, patches, bumper stickers, etc. that in their minds suggested "support" for either the Bandidos or the Cossacks.

## 42 U.S.C. § 1983 – Municipal Liability

361.    Paragraphs 1-360 are incorporated herein by reference.

362.    At all relevant times, Defendant Brent Stroman and/or Defendant Lanning, as the acting Chief, was the policymaker, or the *de facto* policymaker, for the City of Waco with respect to all law enforcement matters relating to the Waco Police Department. At all relevant times, Defendant Abel Reyna, as the District Attorney for McLennan County, Texas, was the policymaker, or the *de facto* policymaker, with respect to all law enforcement matters relating to the McLennan County District Attorney's Office. As such, the City of Waco and McLennan County are liable for Plaintiffs' constitutional wrongs suffered as the individual Defendants are the policymakers for their respective governmental employers.

363.    Furthermore, despite all the obvious wrongs, no City of Waco or McLennan County employee has received any discipline or consequence due to their actions, thereby ratifying their actions as policy of the City of Waco and McLennan County.

## VII. DAMAGES

364.    As a direct and proximate result of the acts and omissions outlined above, each Plaintiff has been severely damaged.  Each Defendant, acting individually, or in concert with the other Defendants, has caused each Plaintiff to suffer the damages described below.

365.    Each Plaintiff seeks compensatory damages in an amount deemed sufficient by the trier of fact to compensate them for their damages, which includes past and future mental anguish, past and future pain and suffering, past and future damage to their reputations, and past and future lost wages and lost earning capacities.

366.    Each Plaintiff also seeks damages as a result of Defendants' actions and conduct that have impinged on rights guaranteed by the First Amendment, such as Plaintiffs' right to free speech, and to association. Conditions placed on Plaintiffs' bonds have deprived Plaintiffs of rights guaranteed by the Constitution. It was entirely foreseeable to Defendants that falsely arresting and charging Plaintiffs with a criminal offense for which probable cause was lacking would lead to these constitutional deprivations and damages.

367.    Each Plaintiff also seeks damages for the costs they incurred in having to post bail and defend against the false criminal charges filed against them.  Those costs include the money they paid for legal representation.

368.    Each Plaintiff also seeks exemplary damages against each Defendant.

369.    Each Plaintiff has retained the services of the undersigned counsel, and claim entitlement to an award of reasonable and necessary attorney's fees under 42 U.S.C. § 1983 and 1988.

## VIII. JURY DEMAND

370.    Plaintiffs respectfully request a trial by jury.

## PRAYER FOR RELIEF

For these reasons, each Plaintiff seeks a judgment against Defendants for:

a.   compensatory and actual damages in an amount deemed sufficient by the trier of fact;

b.   exemplary damages;

c.   attorney's fees pursuant to 42 U.S.C. §§ 1983 and 1988;

d.   costs of court; and

e.   interest allowed by law for prejudgment or post-judgment interest.

Respectfully submitted,

By: _/s/ Don Tittle_____
    Don Tittle
    State Bar No. 20080200
    don@dontittlelaw.com
LAW OFFICES OF DON TITTLE, PLLC
6301 Gaston Avenue, Suite 440
Dallas, Texas 75214
(214) 522-8400
(214) 389-1002 – Fax

*LEAD ATTORNEY*

F. Clinton Broden
State Bar No. 24001495
BRODEN, MICKELSEN, HELMS & SNIPES, LLP
2600 State Street
Dallas, Texas 75204
214-720-9552
214-720-9594 – Fax

*ATTORNEYS FOR PLAINTIFFS*

THE STATE OF TEXAS      §      DOCKET # _____
                            §

COUNTY OF MCLENNAN      §      COURT: JP COURT PRECINCT 1 PLACE 2

## COMPLAINT
### {Articles 15.04 & 15.05, Texas Code of Criminal Procedure}

BEFORE ME, THE UNDERSIGNED AUTHORITY, PERSONALLY APPEARED THE AFFIANT HEREIN, A PEACE OFFICER UNDER THE LAWS OF TEXAS, WHO, BEING DULY SWORN, ON OATH MADE THE FOLLOWING STATEMENTS AND ACCUSATIONS:

My name is MANUEL CHAVEZ and I am commissioned as a peace officer with the City of Waco by The State of Texas. I hereby state upon my oath that I have reason to believe and do believe that heretofore, and before the making and filing of this Complaint, that on or about May 17, 2015, in McLennan County, Texas, the said _____ did then and there, as a member of a criminal street gang, commit or conspire to commit murder, capital murder, or aggravated assault, against the laws of the State.

My probable cause for said belief and accusation is as follows:

Three or more members and associates of the Cossacks Motorcycle Club (Cossacks) were in the parking lot of the Twin Peaks restaurant in Waco, McLennan County Texas. Three or more members and associates of the Bandidos Motorcycle Club (Bandidos) arrived in the parking lot of the Twin Peaks restaurant and engaged in an altercation with the members and associates of the Cossacks. During the course of the altercation, members and associates of the Cossacks and Bandidos brandished and used firearms, knives or other unknown edged weapons, batons, clubs, brass knuckles, and other weapons. The weapons were used to threaten and/or assault the opposing factions. Cossacks and Bandidos discharged firearms at one another. Members of the Waco Police Department attempted to stop the altercation and were fired upon by Bandidos and/or Cossacks. Waco Police Officers returned fire, striking multiple gang members. During the exchange of gunfire, multiple persons where shot. Nine people died as a result of the shooting between the members of the biker gangs. Multiple other people were injured as a result of the altercation. The members and associates of the Cossacks and Bandidos were wearing common identifying distinctive signs or symbols and/or had an identifiable leadership and/or continuously or regularly associate in the commission of criminal activities. The Texas Department of Public Safety maintains a database containing information identifying the Cossacks and their associates as a criminal street gang and the Bandidos and their associates as a criminal street gang.



EXHIBIT

1

After the altercation, the subject was apprehended at the scene, while wearing common identifying distinctive signs or symbols or had an identifiable leadership or continuously or regularly associate in the commission of criminal activities.

After the altercation, firearms, knives or other unknown edged weapons, batons, clubs, brass knuckles, and other weapons were recovered from members and associates of both criminal street gangs.

Multiple motorcycles with common identifying signs or symbols of the Cossacks and Bandidos and their associates were recovered at the scene. Additional weapons including: firearms, ammunition, knives, brass knuckles, and other weapons were found on the motorcycles.

_Mal Chg 238_
**Complainant**

SWORN TO AND SUBSCRIBED BEFORE ME BY SAID AFFIANT/COMPLAINANT ON
THIS THE _18th_ DAY OF _may_ , _2015._

**JUSTICE OF THE PEACE**
**MCLENNAN COUNTY, TEXAS**